Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

David V. Luu, SBN 243258
Law Offices of David V. Luu
930 W. 17th Street, Suite B
Santa Ana, CA 92706

TEL. (714) 697-8600
FAX (714) 835-5898
david@luu-law.com

FOR COURT USE ONLY

☒ Attorney for: Debtor

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

In re:

Josephine G. Paragatos,

CASE NO.: 8:12-bk-14067-ES

CHAPTER: 13

### NOTICE OF OBJECTION TO CLAIM

DATE: 01/07/2016
TIME: 10:30 am
COURTROOM: 5A
PLACE: 411 West Fourth Street
   Santa Ana, CA 92701-4593

Debtor(s).

1. TO *(specify claimant and claimant's counsel, if any)*: U.S. Bank National Association, not in its individual capacity, but solely as Legal Title for LVS Title Trust I, BSI Financial Services, Inc., servicer

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim #18_____) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date: 11/19/15

Date Notice Mailed: 11/19/15

Law Offices of David V. Luu
Printed name of law firm

_____
Signature

David V. Luu
Printed name of attorney for objector

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  LAW OFFICES OF DAVID V. LUU
   DAVID V. LUU, #243258
2  930 W. 17th Street, Suite B
3  Santa Ana, California 92706

4  Telephone: 714.697.8600
   Facsimile: 714.835.5898
5

6  Attorneys for Debtor

7

8              **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11   In re:                          CASE NO: 8:12-bk-14067-ES

12                                    Chapter 13

13   Josephine G. Paragatos,         **OBJECTION TO NOTICE OF**
                                     **MORTGAGE PAYMENT CHANGE**
14            Debtor.                DATE: JANUARY 7, 2016
15                                   TIME: 10:30 A.M.
                                     CTRM: 5A
16

17

18   TO THE HONORABLE ERITHE SMITH; AMRANE COHEN, CHAPTER 13 TRUSTEE; U.S.

19   BANK NATIONAL ASSOCIATION; ALL INTERESTED PARTIES, AND THEIR ATTORNEYS

20   OF RECORD:

21        COMES NOW the above-named Debtor, by and through her attorney of record in this case,

22   David V. Luu, pursuant to FRBP § 3002.1(e) and respectfully object to the Notice of Mortgage

23   Payment Change filed by U.S. Bank National Association, not in its individual capacity, but solely

24   as Legal Title for LVS Title Trust I, by their servicer BSI Financial Services, Inc. (hereinafter, "U.S.

25   Bank"), and seek reasonable attorney's fees and costs for said objection in support hereof

26   respectfully show unto the Court the following:

27

28   ///

## OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE

I.    INTRODUCTION

U.S. Bank holds a Deed of Trust against Debtor's home. After Debtor filed the bankruptcy petition and the Chapter 13 Plan was confirmed, U.S. Bank filed its Proof of Claim. On October 28, 2015, U.S. Bank filed a Notice of Mortgage Payment Change, which seeks to increase Debtor's mortgage payment. The basis for the change according to the escrow analysis is for payment of county taxes. However, Debtor's mortgage payment is for interest only, and it is Debtor's responsibility to directly pay property taxes to the County of Orange. But more importantly, Debtor has been making her property tax payments and can document those payments. In short, Debtor objects to the Notice of Mortgage Payment Change, because a lender should not be allowed to increase mortgage payment to escrow for property taxes especially when the borrower is paying directly to the county and her property tax payments are current.

II.    STATEMENT OF FACTS

This case was commenced by the filing of a voluntary petition on behalf of the Debtor on March 30, 2012, and Amrane Cohen has been appointed to serve as Trustee. On May 22, 2012, the Chapter 13 Plan was confirmed. U.S. Bank filed a Proof of Claim on July 3, 2012, which was amended shortly thereafter on July 27, 2012. (See Exhibit 1 and Exhibit 2). There was no escrow for property taxes in the Proof of Claim filed on July 3, 2012, or on the amended Proof of Claim filed on July 27, 2012.

U.S. Bank's Deed of Trust provides for payment of collection fees in order to protect their security interest as stated in paragraph 9 of the deed of trust attached to Claim 18-1, and the amended Claim 18-2. (See Exhibit 1, pages 20-21; and, Exhibit 2, pages 20-21).

On January 9, 2015, a Notice of Mortgage Payment Change was filed by U.S. Bank whereby the interest rate was adjusted from 2.875% to 3.000%, so that Debtor's interest only payment

increased from $1,073.33 to $1,120.00. (See Exhibit 3). Again, there was no mention of an escrow for property tax.

On October 28, 2015, more than 3 years after the commencement of the case, U.S. Bank filed a Notice of Mortgage Payment Change, whereby Debtor's mortgage payment would be increased from $1,120.00 to $1,826.53, with that change to take effect beginning on December 1, 2015. To support the change, U.S. Bank submitted an escrow analysis, for the first time, because of anticipated property tax payments, which would be paid in December 2015 and April 2016. The total of the two tax payments is $4,844.86. (See Exhibit 4).

Debtor is responsible for making her property tax payments directly to the county. In fact, she is current on her property taxes and she has been making payments directly to the county, including: one on April 11, 2014, to the County of Orange in the amount of $2,358.65; another on December 8, 2015 for $2,422.43; and, a third one on April 13, 2015 for $2,422.43. (See Exhibit 5).

III.    LEGAL ARGUMENTS

1.    The Court should sustain Debtor's Objection to the Notice of Mortgage Payment Change, because it is inconsistent and unsupported by the course and conduct in the handling of Debtor's account.

The Notice of Mortgage Payment Change filed on October 28, 2015, by U.S. Bank inappropriately increases Debtor's mortgage payment as escrow for payment of property taxes, because it seeks to increase Debtor's mortgage payment for payment of property taxes despite the fact that Debtor is current on her property taxes and is already making payments directly to the County of Orange. Debtor respectfully submits that the Court should sustain her Objection to the Notice of Mortgage Payment, because it is inconsistent and unsupported by the course and conduct in the handling of Debtors account.

///

This Objection is a Contested Matter objecting to the claim being asserted in this bankruptcy case by U.S. Bank. Federal Rule of Bankruptcy Procedure 3002.1(e) sets the procedure to object to any post-petition fee, expense, or charge asserted to be part of the cure of any default for a claim in the bankruptcy case. Jurisdiction for this Objection exists pursuant to 28 U.S.C. §§ 1334 and 157(a). This Contested Matter is a core matter arising under Title 11, including 11 U.S.C. § 502, 28 U.S.C. § 157(b)(2)(A), (B), and (O).

"On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." FRBP 3002.1(e).

A claim objection must be set for hearing on notice of not less than 30 days, served on the claimant at the address disclosed in its proof of claim, and at such other addresses and upon such parties as may be required by FRBP 7004 and other applicable rules. LBR 3007-1. A response must be filed and served not later than 14 days prior to the date of the hearing set forth in the notice, otherwise the court may grant the relief requested in the objection without further notice or hearing. Id.

Here, Debtor objects to the Notice of Mortgage Payment Change filed by U.S. Bank on October 28, 2015. The proposed mortgage change seeks to increase Debtor's mortgage payment on account of anticipated property taxes to be paid in December 2015 and in April 2016. According to the escrow analysis that accompanies the subject Notice of Mortgage Payment Change the sum total to be paid to the county is $4,844.86. However, this change is inconsistent and unsupported, especially when we consider the facts of this case.

///

OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE

First, Debtor has been responsible for making property tax payments directly to the county, which U.S. Bank has apparently recognized since the inception of this case. While U.S. Bank filed a Proof of Claim on July 3, 2012, it did not raise any issue of a property tax escrow at that time. Further, when U.S. Bank amended its Proof of Claim on July 27, 2012, it again did not raise the issue of a property tax escrow. Thereafter, on January 9, 2015, when U.S. Bank filed its first Notice of Mortgage Payment Change, U.S. Bank continued in making no mention of a property tax escrow. Now, more than 3 years since the commencement of the case, U.S. Bank is inexplicably seeking (especially when we consider that property taxes are current), for the first time, to include a property tax escrow. Of course this is a drastic change to Debtor's mortgage payment, because it would result in an increase of $706.53 per month, or result in an increase of more than 63% to Debtor's mortgage payment.

Second, Debtor is current on her property taxes and she has been making her property tax payments directly to the County of Orange, including: one on April 11, 2014, to the County of Orange in the amount of $2,358.65; another on December 8, 2015 for $2,422.43; and, a third payment on April 13, 2015 for $2,422.43. (See Exhibit 5). After consideration of the fact that Debtor is responsible for making and the fact she has been making property tax payments to the county, it is readily apparent that there's no reason or support for U.S. Bank's mortgage payment increase on account of a property tax escrow, especially when Debtor has remained current on her property tax payments.

     2.   <u>Reasonable attorney's fees and costs should be awarded for the Objection.</u>

California Civil Code §1717 provides for attorney fees for the prevailing party whenever there is an attorney fee provision, there has been notice and a hearing, wherein the reasonable attorney's fees shall be fixed by the Court.

///

OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE

Attached to U.S. Bank's Proof of Claim filed on July 3, 2012, and attached to the amended Proof of Claim filed on July 27, 2012, are copies of the Promissory Note and Deed of Trust upon which the U.S. Bank claim is based.  (See Exhibit 1, pages 20-21; and, Exhibit 2, pages 20-21)

Paragraph 22 of the Deed of Trust provides, "If the default [breach of any covenant or agreement in the Deed of Trust] is not cured. . . Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to reasonable attorneys' fees and costs of title evidence." The Note in Paragraph 7.(E) provides that in the event of a default in payments, the borrower is obligated to pay the Note holder costs and expenses, including reasonable attorneys' fees.

California Code of Civil Procedure § 1717(a) provides that for any action on a contract in which the contract provides for attorneys' fees and costs to be awarded to one of the parties if they prevail, then the other party shall also be entitled to enforce that provision (even though not named) if such other party is the prevailing party.  In this case, through the Notice of Mortgage Payment Change U.S. Bank asserted monetary obligations of the Debtor that are greater than would determined proper by the court.  Debtor submits that she should be deemed the prevailing party in this Contested Matter (the "action") and thereby entitled to recover reasonable attorneys' fees and expenses.

IV.    CONCLUSION

For all of the foregoing reasons, Debtor prays of the Court as follows:

1.  That the Court direct the Chapter 13 Trustee to strike the Notice of Mortgage Payment Change filed by U.S. Bank on October 28, 2015;

2.  The Court determine and award reasonable attorney fees pursuant to California Civil Code Section 1717; and,

3.  That the Debtor have such other and further relief as the Court may deem just and proper.

OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE

1    Dated: November 18, 2015

Respectfully submitted,

2

LAW OFFICES OF DAVID V. LUU

3

4    David V. Luu, #243258
Attorney for Debtor

5    JOSEPHINE G. PARAGATOS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JOSEPHINE PARAGATOS IN SUPPORT OF OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE AND REQUEST FOR ATTORNEY'S FEES [CCP 1717]

I, Josephine Paragatos, declare as follows:

1.    I am the debtor in this Chapter 13 case, that was commenced with the filing of a voluntary petition on March 30, 2012, which Amrane Cohen has been appointed to serve as Trustee.

2.    My Chapter 13 Plan was confirmed on May 22, 2012.

3.    U.S. Bank filed a Proof of Claim on July 3, 2012, which was amended shortly thereafter on July 27, 2012.  A true and correct copy of the Proof of Claims are attached hereto as "Exhibit 1" and "Exhibit 2," respectively.

4.    On January 9, 2015, a Notice of Mortgage Payment Change was filed by U.S. Bank whereby the interest rate on my mortgage was adjusted from 2.875% to 3.000%, so that my interest only payment increased from $1,073.33 to $1,120.00.  A true and correct copy of the January 9, 2015, Notice of Mortgage Payment Change is attached hereto as "Exhibit 3."

5.    On October 28, 2015, a Notice of Mortgage Payment Change was filed by U.S. Bank.  A true and correct copy of the October 28, 2015, Notice of Mortgage Payment Change is attached hereto as "Exhibit 4."

6.    I have reviewed the October 28, 2015, Notice of Mortgage Payment Change from U.S. Bank, including the escrow analysis, whereby my mortgage payment would be increased from $1,120.00 to $1,826.53, with that change to take effect beginning on December 1, 2015.  To support the change, U.S. Bank submitted an escrow analysis, for the first time, because of anticipated property tax payments, which would be paid in December 2015 and April 2016.  The total of the two tax payments is $4,844.86.

7.     I have been responsible for making property tax payments directly to the county. In fact, I have been making payments directly to the county, including: one on April 11, 2014, to the County of Orange in the amount of $2,358.65; another on December 8, 2015 for $2,422.43; and, a third one on April 13, 2015 for $2,422.43.   A true and correct copy of my proof of payments, redacted for privacy reasons, are attached hereto as "Exhibit5."

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  If called as a witness, I could competently testify thereto.

Executed on November 18, 2015, at Santa Ana, California.


Josephine G. Paragatos
Josephine G. Paragatos

EXHIBIT 1

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Central District of California | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**

## Josephine G. Paragatos

**Case Number:**

8:12-bk-14067-ES

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust I, BSI Financial Services, Inc., servicer

**COURT USE ONLY**

Name and address where notices should be sent:

Pite Duncan, LLP
4375 Jutland Drive, Suite 200, P.O. Box 17933
San Diego, CA 92177-0933

Telephone number: (858)750-7600    email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
        (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

3Point Asset Management

7505 Irvine Center Dr.
Irvine, CA. 92618

Telephone number: (949) 201-4287    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**        $ 476,282.61

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  MONEY LOANED
    (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: *******7213 | 3a. Debtor may have scheduled account as: (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** 1 Ashbury Court, Aliso Viejo, California 92656

**Value of Property:** $ 355,600.00*

**Annual Interest Rate** 2.875 % ☐ Fixed  or ☑ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$ 27,259.27

**Basis for perfection:** Mortgage/Deed of Trust

**Amount of Secured Claim:** $ 476,282.61

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)                                                                                                                    2

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | | |
|---|---|---|
| Print Name: Bradley S. Beherns | | |
| Title: ATTORNEY | /s/  *Brad Beh...*  | SBN (276651) July 2, 2012 |
| Company: PITE DUNCAN, LLP | (Signature) | (Date) |
| Address and telephone number (if different from notice address above): | | |
| 4375 Jutland Drive, Suite 200 | | |
| P.O. Box 17933 | | |
| San Diego, CA 92177-0933 | | |
| Telephone number: (858) 750-7600           email: | | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/11)

3

**DEFINITIONS**

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**INFORMATION**

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Josephine G. Paragatos | Case number: | 8:12-bk-14067-ES |
| Name of creditor: | U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust I, BSI Financial Services, Inc., servicer | Last four digits of any number you use to identify the debtor's account | *******7213 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. Principal due | | | | | (1) | $ 448,000.00 |

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | | |
|---|---|---|---|---|---|
| 2.875 % | 4/1/2011 | 3/30/2012 | $25,896.67 | | |
| Total interest due as of the petition date | | | $25,896.67 | Copy total here ▶ (2) | $25,896.67 |

| | | |
|---|---|---|
| 3. Total principal and interest due | (3) | $473,896.67 |

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ 0.00 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ 0.00 |
| 3. Attorney's fees | | (3) | $ 0.00 |
| 4. Filing fees and court costs | | (4) | $ 0.00 |
| 5. Advertisement costs | | (5) | $ 0.00 |
| 6. Sheriff/auctioneer fees | | (6) | $ 0.00 |
| 7. Title costs | | (7) | $ 0.00 |
| 8. Recording fees | | (8) | $ 0.00 |
| 9. Appraisal/broker's price opinion fees | | (9) | $ 0.00 |
| 10. Property inspection fees | 8/30/11, 9/27/11, 10/28/11, 11/25/11 | (10) | $ 80.00 |
| 11. Tax advances (non-escrow) | | (11) | $ 0.00 |
| 12. Insurance advances (non-escrow) | | (12) | $ 0.00 |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 0.00 |
| 14. Property preservation expenses. Specify: | | (14) | $ 0.00 |
| 15. Other. Specify: Post Petition Attorneys' Fees and Costs | 5/23/12 | (15) | $ 425.00 |
| 16. Other. Specify: Post Petition Attorneys' Fees and Costs (Per APO) | 5/23/12 | (16) | $ 450.00 |
| 17. Other. Specify: Foreclosure Fees and Costs | 8/17/11, 8/26/11, 10/6/11, 11/28/11, 1/11/12 | (17) | $ 2,504.27 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $3,459.27 |

B 10 (Attachment A) (12/11)                                                              Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐  No

☒  Yes.  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | Installment payments due | | Date last payment received by creditor | | | 5/16/2011 | | | | |
| | | | Number of installment payments due | | | (1) | 11 | | | |
| 2. | Amount of installment payments due | 10 | installments | From 5/1/2011 | To 2/1/2012 | @ | $2,380.00 | = | $23,800.00 | |
| | | 1 | installments | From 3/1/2012 | To 3/1/2012 | @ | $1,073.33 | = | $1,073.33 | |

Total installment payments due as of the petition date — $24,873.33 — Copy total here ▶ (2) $24,873.33

| | |
|---|---|
| 3. Calculation of cure amount | Add total prepetition fees, expenses, and charges — Copy total from Part 2 here ▶  + $3,459.27 |
| | Subtract total of unapplied funds (funds received but not credited to account) — $1,073.33 |
| | Subtract amounts for which debtor is entitled to a refund — $0.00 |
| | Total amount necessary to cure default as of the petition date — (3) $27,259.27 |

Copy total onto Item 4
of Proof of Claim form

| | | | | |
|---|---|---|---|---|
| Steven W. Pite *CA/NV/WA* | Josephine E. Salmon *AK/AZ/CA/NY* | Joseph C. Delmotte *CA* | Parada Kovadi *CA* | Gilbert R. Yabes *CA* |
| David E. McAllister *AZ/CA/HI/OR/UT/WA* | Ellen Cha *CA/MN* | Gabriel Ozel *CA/NY/TX* | Philip Giles *CA* | Matthew R. Clark, III *CA* |
| Casper J. Rankin *CA/OR* | Erin L. Laney *CA* | Balpreet K. Thiara *CA* | Catherine T. Vinh *CA* | Arnold L. Graff *CA/WI* |
| Eddie R. Jimenez *CA/NV/TX* | Gagan G. Valdeeswaran *CA* | Evan Daily *CA* | Ace C. Van Patten *ID/NV* | Cara Christensen *CA/WA* |
| Brian A. Paino *AZ/CA/TX/VA* | Megan E. Lees *CA* | Bryan S. Fairman *CA* | Jesse Baker *OR/UT/WA* | Jamin S. Neil *AZ* |
| Christopher McDermott *CA* | | Jared Bissell *CA* | Todd Garan *CA* | Grant M. Tabor *TX* |
| | | Anh P. Nguyen *TX* | Matthew McArthur *NV* | Robert P. Zahradka *CA* |
| | | Brad Beherns *CA* | Chad L. Butler *CA* | |

## PROOF OF CLAIM DISCLOSURES

### IN RE: PARAGATOS, JOSEPHINE G.
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

### CASE NO. 8:12-bk-14067-ES
CREDITOR: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST I, BSI FINANCIAL SERVICES, INC., SERVICER

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. Please be on notice that the Post-Petition Attorneys' Fees and Costs listed in Part 2 of the Mortgage Proof of Claim Attachment include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 13 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan. If the Debtor(s) object to these fees being included in the Proof of Claim, please contact Steven Pite at (858)-750-7600 in order to have these fees and costs removed from the Proof of Claim.
4. *This valuation has been provided solely for the purpose of complying with the United States Bankruptcy Court's official B 10 form and is not intended to serve as Creditor's opinion of value for purposes of an 11 U.S.C. § 506(a) proceeding. This valuation was obtained from the Debtor(s) Schedule A of their bankruptcy petition. However, this valuation shall have no prejudicial effect against the Creditor and Creditor reserves the right to obtain its own independent valuation of the Property in the event the value of the Property becomes a contested issue in this bankruptcy case.

Case 8:12-bk-14067-ES    Doc 75    Filed 11/19/15    Entered 11/19/15 12:53:28    Desc
Case 8:12-bk-14067-ES    Main Document    Page 7 of 109

Claim 18-1    Filed 07/03/12    Desc Main Document    Page 7
of 37

## Annual Reserve Account Disclosure Statement

### Projections for Coming Year

Page 1

|                | Loan Number<br>Redaction | Statement Date<br>May 23, 2012 |

JOSEPHINE G PARAGATOS
1 ASHBURY CT
ALISO VIEJO CA 92656

Property Address
1 ASHBURY CT
ALISO VIEJO CA 92656

This is an estimate of activity in your reserve account during the coming year based on payments projected to be made to and from your account.

### Projected Reserve Activity From June 2012 To June 2013

| | Projected Payments | | | Reserve Balance Comparison | |
|---|---|---|---|---|---|
| | To | From | Description | Projected | Required |
| | | | Starting Balance | | |
| Jun 2012 | | | | Low 1-> -3,088.75   Low 2-> | |
| Jul 2012 | | | | -3,088.75 | |
| Aug 2012 | | | | -3,088.75 | |
| Sep 2012 | | | | -3,088.75 | |
| Oct 2012 | | | | -3,088.75 | |
| Nov 2012 | | | | -3,088.75 | |
| Dec 2012 | | | | -3,088.75 | |
| Jan 2013 | | | | -3,088.75 | |
| Feb 2013 | | | | -3,088.75 | |
| Mar 2013 | | | | -3,088.75 | |
| Apr 2013 | | | | -3,088.75 | |
| May 2013 | | | | -3,088.75 | |

### Projected Payments From Reserve

| Type | Term | Description | Expiration Date | Disbursement Amount<br>Total Reserve Disbursements | Yearly Amount |
|---|---|---|---|---|---|

Payments to reserve will be $0.00 divided by 00 = $0.00

### Determining the Sufficiency of Your Reserve Balance and Payment

If the 'Starting Balance' is a negative amount (-) you have a reserve deficiency.
Your deficiency is $3,088.75 / 12 = $257.40

| | |
|---|---|
| Total Reserve Payment | $257.40 |
| Principal and Interest Payment | $1,073.33 |
| Payment Effective on    6/1/2012 | $1,330.73 |

The principal and interest portion of your payment may change in accordance with your loan documents which could result in a change in your payment.

# Reserve History

| | |
|---|---|
| Loan Number | Statement Date |
| Redaction | May 23, 2012 |

Property Address
1 ASHBURY CT
ALISO VIEJO CA 92656

JOSEPHINE G PARAGATOS
1 ASHBURY CT
ALISO VIEJO CA 92656

| Currently as of May 01, 2011 your payment is: | |
|---|---|
| Principal and Interest | $2,380.00 |
| Reserve | |
| Total Payment | $2,380.00 |

## This is a Statement of Actual Activity in Your Reserve Account
### From May 2011 Through May 2012

| | Payments to Reserve | | Payments from Reserve | | | Reserve Balance | |
|---|---|---|---|---|---|---|---|
| | Projected | Actual | Projected | Actual | Description | Projected | Actual |
| | | | | | Starting Balance | | ($3,088.75) |
| May 2011 | | P | | | | | ($3,088.75) |
| Jun 2011 | | P | | | | | ($3,088.75) |
| Jul 2011 | | P | | | | | ($3,088.75) |
| Aug 2011 | | P | | | | | ($3,088.75) |
| Sep 2011 | | P | | | | | ($3,088.75) |
| Oct 2011 | | P | | | | | ($3,088.75) |
| Nov 2011 | | P | | | | | ($3,088.75) |
| Dec 2011 | | P | | | | | ($3,088.75) |
| Jan 2012 | | P | | | | | ($3,088.75) |
| Feb 2012 | | P | | | | | ($3,088.75) |
| Mar 2012 | | P | | | | | ($3,088.75) |
| Apr 2012 | | P | | | | | ($3,088.75) |
| May 2012 | | P | | | | | ($3,088.75) |
| Totals | | | | | | | |

The ending actual balance may include transactions which have not yet posted to/from your reserve as of the date of the analysis. These items are identified with a (P).

Case 8:12-bk-14067-ES Claim 18-1 Filed 07/03/12 Desc Main Document Page 9 of 37

# INITIAL INTEREST[SM] ADJUSTABLE RATE NOTE

**(1-Year Treasury Index - Rate Caps)**
**(Assumable after Initial Period)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JANUARY 05, 2007 CONCORD CALIFORNIA
[Date] [City] [State]

1 ASHBURY COURT, ALISO VIEJO, CA 92656

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $*****448,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on MARCH 01, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on FEBRUARY 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $*********2,380.00. This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is the first day of 03/01/17.

REDACTED

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
Form 5507 5/04 (rev. 7/05)
NMFL #8380 (MS1C) Rev 2/27/2006
VMP-191N (0608)
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5 Initials: 

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of **FEBRUARY, 2012** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage point(s) ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than **11.375** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.375** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.000 %** of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E). Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Josephine G. Paragatos_ _____ (Seal)
JOSEPHINE G PARAGATOS                    -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _Joan M. Mills_
Joan M. Mills, Vice President

This Document was electronically recorded by
**Fidelity National Title B**

Recording Requested By:
WELLS FARGO BANK, N.A.
APN: 937-44-749

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

75.00
2007000049167 08:00am 01/25/07

117 92 D11 24
0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

# FIDELITY NATIONAL TITLE
Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD

EAGAN, MN 55121

Prepared By:
WELLS FARGO BANK, N.A.

1000 BURNETT AVENUE, SUITE 300,
CONCORD, CA 945200000
—————————————[Space Above This Line For Recording Data]—————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JANUARY 05, 2007** together with all Riders to this document.

**(B) "Borrower"** is **JOSEPHINE G PARAGATOS, A MARRIED PERSON**
WOMAN AS HER SOLE AND SEPARATE PROPERTY

INITIAL

Borrower's address is **1 ASHBURY COURT**
**ALISO VIEJO        CA 92656**        . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **NATIONAL ASSOCIATION**
organized and existing under the laws of **THE UNITED STATES**
REDACTED

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

VMP -6(CA) (0207).01

Page 1 of 15        Initials:
NMFL #3005 (CACD) Rev 8/21/2006

VMP Mortgage Solutions, Inc.



Lender's address is **P.O. BOX 11701, NEWARK, NJ 071014701**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INS CO**
**17911 VON KARMAN, SUITE 200, IRVINE, CA 92614**
**(E) "Note"** means the promissory note signed by Borrower and dated **JANUARY 05, 2007**
The Note states that Borrower owes Lender **FOUR HUNDRED FORTY EIGHT THOUSAND AND
00/100**
                                                                              **Dollars**
(U.S. $ ****448,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **FEBRUARY 01, 2037**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

 

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **ORANGE** :

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

**\*SEE ADJUSTABLE RATE RIDER**

Parcel ID Number:                                         which currently has the address of
**1 ASHBURY COURT**                                                              [Street]
**ALISO VIEJO**                                          [City], California **92656**         [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.



Initials: 

-6(CA) (0207).01                        Page 3 of 15                                  Form 3005   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

  -6(CA) (0207).01

Page 4 of 15

Initials 

Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 -6(CA) (0207).01

Page 6 of 16

Initials: 

Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

 

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 -6(CA) (0207).01

Initials: 

Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender




to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 -6(CA) (0207).01

Page 10 of 15

 Initials:

Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.





Initials:

Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           JOSEPHINE G PARAGATOS        -Borrower


_____          _____ (Seal)
                                                                        -Borrower


_____ (Seal)          _____ (Seal)
                  -Borrower                                             -Borrower


_____ (Seal)          _____ (Seal)
                  -Borrower                                             -Borrower


_____ (Seal)          _____ (Seal)
                  -Borrower                                             -Borrower

**State of California**
**County of** Orange                                    } ss.

On Jan 19, 2007        before me,  Cassidy Miller

JOSEPHINE G PARAGATOS                              personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Cassidy Miller _____(Seal)

CASSIDY MILLER
COMM...1533559
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. Dec. 11, 2008

## GOVERNMENT CODE 27361-7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE NOTARY ACKNOWLEDGEMENT
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: Cassidy miller

COMMISSION #: 1533559

COUNTY IN WHICH BOND IS FILED: Orange

DATE COMMISSION EXPIRES: 12-11-08

MANUFACTURER/VENDOR NO: BCT3

DATE: 1 /23/07

MICHELLE BROWN
FIDELITY NATIONAL TITLE

SANTA ANA, CA
PLACE OF EXECUTION

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **5TH**                    day of **JANUARY, 2007**                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to **WELLS FARGO BANK, N.A.**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
**1 ASHBURY COURT, ALISO VIEJO, CA  92656**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as: **HAMPTONS IN ALISO VIEJO**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and
(iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the
periods, and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance,
REDACTED

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-8R (0008)   Form 3140 1/01
Page 1 of 3      Initials:
VMP MORTGAGE FORMS
(800)521-7291

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

-8R (0008)                    Page 2 of 3                    Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_Josephine G. Paragatos_ (Seal)          _____ (Seal)
JOSEPHINE G PARAGATOS      -Borrower                                              Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

# INITIAL INTEREST$^{SM}$ ADJUSTABLE RATE RIDER
## (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this 05               day of
**JANUARY  2007**    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable
Rate Note (the "Note") to **WELLS FARGO BANK, N.A.**

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
**1 ASHBURY COURT, ALISO VIEJO, CA  92656**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of          **6.375**%. The Note provides
for interest only payments until the first fully amortizing principal and interest payment due
date (the "First P&I Payment Due Date"), which is the first day of **MARCH, 2017**       .

The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Interest Change Dates

The interest rate I will pay may change on the first day of **FEBRUARY, 2012**        ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called an "Interest Change Date."

(B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the weekly average yield on United States Treasury securities adjusted to a
constant maturity of one year, as made available by the Federal Reserve Board. The most
recent Index figure available as of the date 45 days before each Interest Change Date is called
the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is
REDACTED

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year Treasury Index
(Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT

NMFL #8361 (FM5R) Rev 5/12/2006
VMP-191R (0508) Form 5107 7/05
Page 1 of 4          Initials:
VMP Mortgage Solutions, Inc.          (800)521-7291

based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                                            percentage point(s) (            2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than            11.375 % or less than            2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than TWO                                                                     percentage point(s) (            2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than            11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. **UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

which Borrower must pay all sums secured by this Security Instrument. If Borrower
fails to pay these sums prior to the expiration of this period, Lender may invoke any
remedies permitted by this Security Instrument without further notice or demand on
Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
JOSEPHINE G PARAGATOS          -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower


-191R (0508)                   Page 4 of 4                   Form 5107 7/05

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (specify): <u>Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) <u>July 3, 2012</u>_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David V Luu  Email: david@luu-law.com
Amrane (SA) Cohen (TR)  efile@ch13ac.com
U.S. Trustee  ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) <u>July 3, 2012</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Josephine G. Paragatos
1 Ashbury Court,
Aliso Viejo, CA 92656-4257

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) <u>July 3, 2012</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| <u>July 3, 2012</u>   ROBERT A. CORREIA | /s/ ROBERT A. CORREIA |
|---|---|
| Date                     Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT 2

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Central District of California | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br><br>Josephine G. Paragatos | Case Number:<br><br>8:12-bk-14067-ES | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust I, BSI Financial Services, Inc., servicer

|  | COURT USE ONLY |
|---|---|
| Name and address where notices should be sent:<br><br>BSI Financial Services<br>314 S Franklin Street<br>Titusville, PA 16354<br><br>Telephone number: (858)750-7600     email: | ☑ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number: **18**<br>*(If known)*<br><br>Filed on: 7/3/2012 |
| Name and address where payment should be sent (if different from above):<br><br>BSI Financial Services<br>Attn: Payment Processing Department<br><br>314 S Franklin Street<br>Titusville, PA 16354<br><br>Telephone number:     email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

1. **Amount of Claim as of Date Case Filed:**     $ 476,282.61

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** MONEY LOANED
   (See instruction #2)

| 3. **Last four digits of any number** by which creditor identifies debtor:<br>*******7213 | 3a. **Debtor may have scheduled account as:**<br><br>(See instruction #3a) | 3b. **Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: 1 Ashbury Court, Aliso Viejo, California 92656

Value of Property: $ _____

Annual Interest Rate 2.875 % ☐ Fixed  or  ☑ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ 27,259.27

Basis for perfection: Mortgage/Deed of Trust

Amount of Secured Claim: $ 476,282.61

Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

Case 8:12-bk-14067-ES    Doc 75    Filed 11/19/15    Entered 11/19/15 12:53:28    Desc
Case 8:12-bk-14067-ES    Main Document    Filed 07/26/12    Desc Main Document    Page 2
of 37

B 10 (Official Form 10) (12/11)                                                                                                     2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

❑ I am the creditor.    ❑ I am the creditor's authorized agent.    ❑ I am the trustee, or the debtor,    ❑ I am a guarantor, surety, indorser, or other codebtor.
                         (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                                         (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Bradley S. Behrens
Title:       ATTORNEY
Company:     PITE DUNCAN, LLP                    /s/   _Brad Behr_                    SBN (276651) July 26, 2012
Address and telephone number (if different from notice address above):    (Signature)                        (Date)
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 921110-0933
Telephone number:  (858) 750-7600          email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in this claim is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Case 8:12-bk-14067-ES    Doc 75    Filed 11/19/15    Entered 11/19/15 12:53:28    Desc
Case 8:12-bk-14067-ES    Main Document    Filed 07/29/12    Page 3
of 37

B 10 (Official Form 10) (12/11)                                                                                      3

_____DEFINITIONS_____                                    _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).**

| | | | |
|---|---|---|---|
| Name of debtor: | Josephine G. Paragatos | Case number: | 8:12-bk-14067-ES |
| Name of creditor: | U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust I, BSI Financial Services, Inc., servicer | Last four digits of any number you use to identify the debtor's account | *******7213 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| 1. Principal due | | | | | (1) | $ 448,000.00 |
|---|---|---|---|---|---|---|

| 2. Interest due | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | | |
|---|---|---|---|---|---|---|
| | 2.875 % | 4/1/2011 | 3/30/2012 | $25,896.67 | | |
| | Total interest due as of the petition date | | | $25,896.67 | Copy total here ▶ (2) | $25,896.67 |

| 3. Total principal and interest due | | | | | (3) | $473,896.67 |
|---|---|---|---|---|---|---|

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ 0.00 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ 0.00 |
| 3. Attorney's fees | | (3) | $ 0.00 |
| 4. Filing fees and court costs | | (4) | $ 0.00 |
| 5. Advertisement costs | | (5) | $ 0.00 |
| 6. Sheriff/auctioneer fees | | (6) | $ 0.00 |
| 7. Title costs | | (7) | $ 0.00 |
| 8. Recording fees | | (8) | $ 0.00 |
| 9. Appraisal/broker's price opinion fees | | (9) | $ 0.00 |
| 10. Property inspection fees | 8/30/11, 9/27/11, 10/28/11, 11/25/11 | (10) | $ 80.00 |
| 11. Tax advances (non-escrow) | | (11) | $ 0.00 |
| 12. Insurance advances (non-escrow) | | (12) | $ 0.00 |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 0.00 |
| 14. Property preservation expenses. Specify: | | (14) | $ 0.00 |
| 15. Other. Specify: Post Petition Attorneys' Fees and Costs | 5/23/12 | (15) | $ 425.00 |
| 16. Other. Specify: Post Petition Attorneys' Fees and Costs (Per APO) | 5/23/12 | (16) | $ 450.00 |
| 17. Other. Specify: Foreclosure Fees and Costs | 8/17/11, 8/26/11, 10/6/11, 11/28/11, 1/11/12 | (17) | $ 2,504.27 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $3,459.27 |

B 10 (Attachment A) (12/11)                                                                     Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐  No

☒  Yes.  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. | **Installment payments due** | | Date last payment received by creditor | | | 5/16/2011 | | |
| | | | Number of installment payments due | | (1) | 11 | | |
| 2. | **Amount of installment payments due** | 10 | installments  From 5/1/2011 | To 2/1/2012 | @ | $2,380.00 | = $23,800.00 | |
| | | 1 | installments  From 3/1/2012 | To 3/1/2012 | @ | $1,073.33 | = $1,073.33 | |

Total installment payments due as of the petition date    $24,873.33    Copy total here ▶   (2)   $24,873.33

3.  **Calculation of cure amount**

Add total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶   +   $3,459.27

Subtract total of unapplied funds (funds received but not credited to account)    −   $1,073.33

Subtract amounts for which debtor is entitled to a refund    −   $0.00

Total amount necessary to cure default as of the petition date    (3)   $27,259.27

Copy total onto Item 4 of Proof of Claim form

| Steven W. Pite *CA/NV/WA* | Josephine E. Salmon | Joseph C. Delmotte *CA* | Parada Kovadi *CA* | Gilbert R. Yabes *CA* |
| David E. McAllister | *AK/AZ/CA/NY* | Gabriel Ozel *CA/NY/TX* | Philip Giles *CA* | Matthew R. Clark, III *CA* |
| *AZ/CA/HI/OR/UT/WA* | Ellen Cha *CA/MN* | Balpreet K. Thiara *CA* | Catherine T. Vinh *CA* | Arnold L. Graff *CA/WI* |
| Casper J. Rankin *CA/OR* | Erin L. Laney *CA* | Evan Daily *CA* | Ace C. Van Patten *ID/NV* | Cara Christensen *CA/WA* |
| Eddie R. Jimenez *CA/NV/TX* | Gagan G. Valdeeswaran | Bryan S. Fairman *CA* | Jesse Baker *OR//UT/WA* | Jamin S. Neil *AZ* |
| Brian A. Paino *AZ/CA/TX/VA* | *CA* | Jared Bissell *CA* | Todd Garan *CA* | Grant M. Tabor *TX* |
| Christopher McDermott *CA* | Megan E. Lees *CA* | Anh P. Nguyen *TX* | Matthew McArthur *NV* | Robert P. Zahradka *CA* |
| | | Brad Beherns *CA* | Chad L. Butler *CA* | |

## AMENDED PROOF OF CLAIM DISCLOSURES

### IN RE: **PARAGATOS, JOSEPHINE G.**
### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

### CASE NO. 8:12-bk-14067-ES

CREDITOR: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST I, BSI FINANCIAL SERVICES, INC., SERVICER

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.

2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.

3. Please be on notice that the Post-Petition Attorneys' Fees and Costs listed in Part 2 of the Mortgage Proof of Claim Attachment include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 13 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan. If the Debtor(s) object to these fees being included in the Proof of Claim, please contact Steven Pite at (858)-750-7600 in order to have these fees and costs removed from the Proof of Claim.

4. *This valuation has been provided solely for the purpose of complying with the United States Bankruptcy Court's official B 10 form and is not intended to serve as Creditor's opinion of value for purposes of an 11 U.S.C. § 506(a) proceeding. This valuation was obtained from the Debtor(s) Schedule A of their bankruptcy petition. However, this valuation shall have no prejudicial effect against the Creditor and Creditor reserves the right to obtain its own independent valuation of the Property in the event the value of the Property becomes a contested issue in this bankruptcy case.

## Annual Reserve Account Disclosure Statement

### Projections for Coming Year

Page 1

|  | Loan Number | Statement Date |
|---|---|---|
|  | Redaction | May 23, 2012 |

JOSEPHINE G PARAGATOS
1 ASHBURY CT
ALISO VIEJO CA 92656

Property Address
1 ASHBURY CT
ALISO VIEJO CA 92656

This is an estimate of activity in your reserve account during the coming year based on payments projected to be made to and from your account.

### Projected Reserve Activity From June 2012 To June 2013

| Projected Payments To | From | Description | Reserve Balance Comparison Projected | Required |
|---|---|---|---|---|
|  |  | Starting Balance |  |  |
| Jun 2012 |  |  | Low 1-> -3,088.75   Low 2-> |  |
| Jul 2012 |  |  | -3,088.75 |  |
| Aug 2012 |  |  | -3,088.75 |  |
| Sep 2012 |  |  | -3,088.75 |  |
| Oct 2012 |  |  | -3,088.75 |  |
| Nov 2012 |  |  | -3,088.75 |  |
| Dec 2012 |  |  | -3,088.75 |  |
| Jan 2013 |  |  | -3,088.75 |  |
| Feb 2013 |  |  | -3,088.75 |  |
| Mar 2013 |  |  | -3,088.75 |  |
| Apr 2013 |  |  | -3,088.75 |  |
| May 2013 |  |  | -3,088.75 |  |

### Projected Payments From Reserve

| Type | Term | Description | Expiration Date | Disbursement Amount | Yearly Amount |
|---|---|---|---|---|---|
|  |  |  |  | Total Reserve Disbursements |  |

Payments to reserve will be $0.00 divided by 00 = $0.00

### Determining the Sufficiency of Your Reserve Balance and Payment

If the 'Starting Balance' is a negative amount (-) you have a reserve deficiency.
Your deficiency is $3,088.75 / 12 = $257.40

| | |
|---|---|
| Total Reserve Payment | $257.40 |
| Principal and Interest Payment | $1,073.33 |
| Payment Effective on   6/1/2012 | $1,330.73 |

The principal and interest portion of your payment may change in accordance with your loan documents which could result in a change in your payment.

## Reserve History

Page 2

| | |
|---|---|
| Loan Number | Statement Date |
| Redaction | May 23, 2012 |

Property Address
1 ASHBURY CT
ALISO VIEJO CA 92656

JOSEPHINE G PARAGATOS
1 ASHBURY CT
ALISO VIEJO CA 92656

| Currently as of May 01, 2011 your payment is: | |
|---|---|
| Principal and Interest | $2,380.00 |
| Reserve | |
| | |
| Total Payment | $2,380.00 |

### This is a Statement of Actual Activity in Your Reserve Account
### From May 2011 Through May 2012

| | Payments to Reserve | | Payments from Reserve | | | Reserve Balance | |
|---|---|---|---|---|---|---|---|
| | Projected | Actual | Projected | Actual | Description | Projected | Actual |
| | | | | | Starting Balance | | ($3,088.75) |
| May 2011 | | P | | | | | ($3,088.75) |
| Jun 2011 | | P | | | | | ($3,088.75) |
| Jul 2011 | | P | | | | | ($3,088.75) |
| Aug 2011 | | P | | | | | ($3,088.75) |
| Sep 2011 | | P | | | | | ($3,088.75) |
| Oct 2011 | | P | | | | | ($3,088.75) |
| Nov 2011 | | P | | | | | ($3,088.75) |
| Dec 2011 | | P | | | | | ($3,088.75) |
| Jan 2012 | | P | | | | | ($3,088.75) |
| Feb 2012 | | P | | | | | ($3,088.75) |
| Mar 2012 | | P | | | | | ($3,088.75) |
| Apr 2012 | | P | | | | | ($3,088.75) |
| May 2012 | | P | | | | | ($3,088.75) |
| | | | | | | | |
| Totals | | | | | | | |

The ending actual balance may include transactions which have not yet posted to/from your reserve as of the date of the analysis.
These items are identified with a (P).

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**JANUARY 05, 2007**          **CONCORD**                         **CALIFORNIA**

[Date]                        [City]                            [State]

**1 ASHBURY COURT, ALISO VIEJO, CA  92656**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****448,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          **6.375** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month on the first day of the month beginning on **MARCH 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on **FEBRUARY 01, 2037**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ *********2,380.00   . This amount may change in accordance with subsection (C) below.

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is the first day of                    **03/01/17**   .

REDACTED

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
Form 5507 5/04 (rev. 7/05)
NMFL #8380 (MS1C) Rev 2/27/2006
-191N (0509)
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 6                        Initials:




Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of **FEBRUARY, 2012**                      , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS**          percentage point(s) (          **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than          **11.375** % or less than          **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO**          percentage point(s) (          **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than          **11.375** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        **5.000** % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Josephine G. Paragatos_ _____ (Seal)    _____ (Seal)
JOSEPHINE G PARAGATOS                                -Borrower                                                      -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                                      -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                                      -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                                      -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _Joan M. Mills_
Joan M. Mills, Vice President

Recording Requested By:
WELLS FARGO BANK, N.A.
APN: 937-44-771

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

# FIDELITY NATIONAL TITLE

Return To:
WFHM FINAL DOCS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

||||||||||||||||||||||||| 75.00
2007000049167 08:00am 01/25/07
117 92 D11 24
0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00 0.00

Prepared By:
WELLS FARGO BANK, N.A.

1000 BURNETT AVENUE, SUITE 300,
CONCORD, CA  945200000

─────[Space Above This Line For Recording Data]─────

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JANUARY 05, 2007**
together with all Riders to this document.

**(B) "Borrower"** is **JOSEPHINE G PARAGATOS, A MARRIED PERSON XXXXXX**
WOMAN AS HER SOLE AND
SEPARATE PROPERTY


INITIAL

Borrower's address is **1 ASHBURY COURT**
**ALISO VIEJO            CA 92656**         . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **NATIONAL ASSOCIATION**
organized and existing under the laws of **THE UNITED STATES**

REDACTED

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3005  1/01

VMP® -6(CA) (0207).01

Page 1 of 15                    Initials:
NMFL #3005 (CACD) Rev 8/21/2006
VMP Mortgage Solutions, Inc.



Lender's address is **P.O. BOX 11701, NEWARK, NJ  071014701**

Lender is the beneficiary under this Security Instrument.
(D) **"Trustee"** is **FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA  92614**
(E) **"Note"** means the promissory note signed by Borrower and dated **JANUARY 05, 2007**
The Note states that Borrower owes Lender **FOUR HUNDRED FORTY EIGHT THOUSAND AND
00/100**                                                                                    Dollars
(U.S. $ **\*\*\*\*448,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **FEBRUARY 01, 2037**
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [X] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [ ] Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard



to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**                                    of **ORANGE**                                    :

|Type of Recording Jurisdiction|                                    |Name of Recording Jurisdiction|
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

**\*SEE ADJUSTABLE RATE RIDER**

Parcel ID Number:                                                      which currently has the address of
**1 ASHBURY COURT**                                                              [Street]
**ALISO VIEJO**                                            [City], California **92656**       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0207).01                          Page 3 of 15                    In tials:_____                Form 3005   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as
selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring
the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply
such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding
principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments
shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received
from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be
paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or
more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall
be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow
Items." At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to
be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's
obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 -6(CA) (0207).01                    Page 4 of 15          Initials:         Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



Page 5 of 15



Int'als:

Form 3005    1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with





Initials:

-6(CA) (0207).01                    Page 8 of 16                    Form 3005    1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

 -6(CA) (0207).01

Page 7 of 16

Initials: 

Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: 

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



-6(CA) (0207).01                    Page 10 of 15


Initials:

Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (0207).01

Page 12 of 16

Initials: 

Form 3005    1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

 -6(CA) (0207).01

Page 13 of 16

Initials: 

Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Josephine R. Paragatos*_____ (Seal)
                                            JOSEPHINE G PARAGATOS          -Borrower

_____          _____ (Seal)
                                                                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

VMP®-6(CA) (0207).01                    Page 14 of 15                    Form 3005   1/01

State of California
County of **Orange**          } ss.

On **Jan 19, 2007**    before me, **Cassidy Miller**

                                                      personally appeared

**JOSEPHINE G PARAGATOS**

                                                      , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



                                            *Cassidy Miller*        (Seal)

## GOVERNMENT CODE 27361-7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE NOTARY ACKNOWLEDGEMENT
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: Cassidy miller

COMMISSION #: 1533559

COUNTY IN WHICH BOND IS FILED: Orange

DATE COMMISSION EXPIRES: 12-11-08

MANUFACTURER/VENDOR NO: BCT3

DATE: 1/23/07

MICHELLE BROWN
FIDELITY NATIONAL TITLE

SANTA ANA, CA
PLACE OF EXECUTION

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **5TH** day of **JANUARY, 2007** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **WELLS FARGO BANK, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **1 ASHBURY COURT, ALISO VIEJO, CA 92656**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: **HAMPTONS IN ALISO VIEJO**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, REDACTED

**MULTISTATE CONDOMINIUM RIDER**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-8R (0008)   Form 3140 1/01

Page 1 of 3   Initials:
VMP MORTGAGE FORMS
(800)521-7291

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-8R (0008)                          Page 2 of 3              Initials:                Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Josephine R. Paragatos_ (Seal)

JOSEPHINE G PARAGATOS                    -Borrower

_____ (Seal)
                        Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this 05      day of **JANUARY 2007**    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to **WELLS FARGO BANK, N.A.**

(the "Lender") of the same date and covering the property described In the Security Instrument and located at:
**1 ASHBURY COURT, ALISO VIEJO, CA 92656**

[Property Address]
THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of      **6.375%**. The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the first day of **MARCH, 2017**    .
The Note provides for changes in the interest rate and the monthly payments as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Interest Change Dates**
The interest rate I will pay may change on the first day of **FEBRUARY, 2012**    , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is REDACTED

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT

NMFL #8361 (FM5R) Rev 5/12/2006
VMP-191R (0508) Form 5107 7/05
Page 1 of 4     Initials: ____
VMP Mortgage Solutions, Inc.    (800)521-7291

based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                                                    percentage point(s) (            2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than            11.375 % or less than            2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than TWO                                                                percentage point(s) (            2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than            11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

-191R (0508)                    Page 2 of 4                    Form 5107 7/05

Initials:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

Initials: _____

-191R (0508)                     Page 3 of 4                     Form 5107 7/05

which Borrower must pay all sums secured by this Security Instrument. If Borrower
fails to pay these sums prior to the expiration of this period, Lender may invoke any
remedies permitted by this Security Instrument without further notice or demand on
Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Adjustable Rate Rider.

_Josephine G. Paragatos_____ (Seal)        _____ (Seal)
JOSEPHINE G PARAGATOS        -Borrower                                     -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                     -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                     -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                     -Borrower

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): <u>Amended Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>July 27, 2012</u>               , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David V Luu  Email: david@luu-law.com
Amrane (SA) Cohen (TR)  efile@ch13ac.com
U.S. Trustee  ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>7/27/12</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Josephine G. Paragatos
1 Ashbury Court,
Aliso Viejo, CA 92656-4257

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>7/26, 20</u>12, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| <u>July 27, 2012</u> | LYNDSAY FRINK | /s/ LYNDSAY FRINK |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*            **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT 3

B 10 (Supplement 1) (12/11)

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re  Josephine G. Paragatos  ,
<u>Debtor</u>

Case No. 8:12-bk-14067-ES

Chapter 13

## Notice of Mortgage Payment Change

**If you file a claim secured by a security interest in the debtor's principal residence provided for under the debtor's plan pursuant to § 1322(b)(5), you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank National Association, not in its individual ~~capacity, but solely as Legal Title Trustee for LVS Title~~

**Court claim no. (if known):** 18

**Last four digits** of any number you use to identify the debtor's account:  4   5   7   2

**Date of payment change:** 03 / 01 / 2015
Must be at least 21 days after date of this notice

**New total payment:** $ 1,120.00
Principal, interest, and escrow, if any

### Part 1: Escrow Account Payment Adjustment

**Will there be a change in the debtor's escrow account payment?**

[✓] No

[ ] Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

Current escrow payment:  $ _____    New escrow payment:  $ _____

### Part 2: Mortgage Payment Adjustment

**Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?**

[ ] No

[✓] Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

Current interest rate:  2.875 %    New interest rate:  3.000 %

Current principal and interest payment: $ 1,073.33*    New principal and interest payment: $ 1,120.00*

### Part 3: Other Payment Change

**Will there be a change in the debtor's mortgage payment for a reason not listed above?**

[✓] No

[ ] Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

Reason for change: _____

Current mortgage payment: $ _____    New mortgage payment:  $ _____

*interest-only payment

B 10 (Supplement 1) (12/11)                                                                 Page 2

## Part 4: Sign Here

The person completing this Notice must sign it.  Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this Supplement applies.

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.
                       (Attach copy of power of attorney, if any.)

I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.

✖ _____   Date  01 / 09 / 2015
   Signature

Print:   **Megan E. Lees (CA SBN 277805)**        Title  Attorney
         First Name      Middle Name      Last Name

Company  Pite Duncan, LLP

Address  4375 Jutland Dr. Suite 200; P.O. Box 17933
         Number          Street
         San Diego                    CA      92177-0933
         City                         State   ZIP Code

Contact phone ( 858 ) 750 – 7600                  Email  mlees@piteduncan.com

**BSI Financial Services, Inc.**

149 Franklin St, Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

December 22, 2014

*JOSEPHINE G PARAGATOS*
*1 ASHBURY CT*
*ALISO VIEJO CA 92656*

Loan Number:
Property Address:    *1 ASHBURY CT*
                     *ALISO VIEJO CA 92656*

Dear JOSEPHINE G PARAGATOS:

**Changes to Your Mortgage Interest Rate and Payments on 02/01/15**

**Under the terms of your Adjustable-Rate Mortgage (ARM), you had a *12* month(s) period during which your interest rate stayed the same. That period ends on *02/01/15*, so on that date your interest rate and mortgage payment change. After that, your interest rate may change every *12* month(s) for the rest of your loan term.**

| | Current Rate and Monthly Payment | New Rate and Monthly Payment |
|---|---|---|
| Interest Rate | 2.87500% | 3.00000% |
| Principal | $    0.00 | $    0.00 |
| Interest | $    1,073.33 | $    1,120.00 |
| Escrow (Taxes and Insurance) | $    0.00 | $    0.00 |
| **Total Monthly Payment** | $    1,073.33 | $    1,120.00 due March 1, 2015 |

**Interest Rate:** We calculated your interest rate by taking a published "index rate" and adding a certain number of percentage points, called the "margin." Under your loan agreement, your index rate is 0.20000% and your margin is 2.75000%. The 1 YEAR TREASURY is published Weekly   in FEDERAL RESERVE.

**Rate Limit(s):** Your rate cannot go higher than 11.37500% over the life of the loan. Your rate can change each year by no more than 2.00000%. We did not include an additional 0.00000% interest rate increase to your new rate because a rate limit applied. This additional increase may be applied to your interest rate when it adjusts again on February 1, 2016.

**New Interest Rate and Monthly Payment:** The table above shows your new interest rate and new monthly payment. Your new payment is based on the 1 YEAR TREASURY, your margin, 2.75000 your loan balance of $ 448000.00, and your remaining loan term of 264 months.

**Interest Only Payments:** Your new payment will not cover any principal. Therefore, making this payment will not reduce your loan balance.

**Prepayment Penalty:** None

BSI Financial Services
314 S Franklin St, 2nd Floor
Titusville, PA  16354

If you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

\* This is an attempt to collect a debt. Any information obtained will be used for that purpose.
\* Notice: BSI Financial Services, Inc. is a licensed mortgage servicer and debt collector.
**Licensed as Servis One, Inc.** in the state of Florida    **Licensed as Servis One, Inc., dba BSI Financial Services** in the state of Colorado. Colorado Office: 13111 East Briarwood Avenue, Suite 340, Centennial, CO 80112 (303)309-3839    **Licensed as Servis One, Inc., dba BSI Financial Services** in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.    **Licensed as Servis One, Inc., dba BSI Financial Services, Inc.** in Delaware, Illinois, Kentucky, Maryland, Michigan, Missouri, Mississippi, Nebraska, Nevada, Pennsylvania, Rhode Island, South Carolina and Texas. **North Carolina Collection Agency #105608**    Page 2 of 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): **Notice of Mortgage Payment Change,**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 9, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee: Amrane (SA) Cohen - efile@ch13ac.com
Debtor's Attorney: David V Luu - david@luu-law.com
United States Trustee (SA) - ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) January 9, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor:
Josephine G. Paragatos
1 Ashbury Court,
Aliso Viejo, CA 92656-4257

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 9, 2015 | Max A. Dobson | /s/ Max A. Dobson |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                       **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT

### Central District of California

In re  Josephine G Paragatos                ,

Debtor

Case No. 8:12-bk-14067-ES

Chapter 13

## Notice of Mortgage Payment Change

If you file a claim secured by a security interest in the debtor's principal residence provided for under the debtor's plan pursuant to § 1322(b)(5), you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.  See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Titl...

**Court claim no. (if known):** 18

**Last four digits** of any number you use to identify the debtor's account:  4  5  7  2

**Date of payment change:** 12 / 01 / 15

Must be at least 21 days after date of this notice

**New total payment:** $ 1826.53

Principal, interest, and escrow, if any

---

### Part 1: Escrow Account Payment Adjustment

**Will there be a change in the debtor's escrow account payment?**

☐ No

☑ Yes.  Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

See attachment

Current escrow payment: $ 0.00     New escrow payment: $ 403.73

---

### Part 2: Mortgage Payment Adjustment

**Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?**

☑ No

☐ Yes.  Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

Current interest rate: _____%     New interest rate: _____%

Current principal and interest payment: $ _____     New principal and interest payment: $ _____

---

### Part 3: Other Payment Change

**Will there be a change in the debtor's mortgage payment for a reason not listed above?**

☑ No

☐ Yes.  Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.  (Court approval may be required before the payment change can take effect.)

Reason for change: _____

Current mortgage payment: $ _____     New mortgage payment: $ _____

## Part 4: Sign Here

The person completing this Notice must sign it.  Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this Supplement applies.

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.

✖ /s/ Gilbert R. Yabes                                                  Date  10 / 26 / 2015
　　Signature

**Print:**   Gilbert　　R.　　Yabes                          Title  Attorney
　　　　　　First Name　　Middle Name　　Last Name

Company   ALDRIDGE PITE, LLP

Address   4375 Jutland Dr. Suite 200; P.O. Box 17933
　　　　　　Number　　　　　Street
　　　　　　San Diego　　　　　　　　CA　　92177-0933
　　　　　　City　　　　　　　　　　　State　　ZIP Code

Contact phone  ( 858 ) 750 - 7600          Email  gyabes@aldridgepite.com

**BSI Financial Services**

PO Box 517
Titusville PA 16354
800-327-7861
814-260-4159 Fax
www.bsifinancial.com

JOSEPHINE G PARAGATOS
1 ASHBURY CT
ALISO VIEJO       CA 92656

YOUR LOAN NUMBER:

DATE: 10/19/15

### *** ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING    12/15 THROUGH    11/16.

------ ANTICIPATED PAYMENTS FROM ESCROW -    12/15 THROUGH    11/16 ------
              COUNTY TAX            4844.86

         TOTAL PAYMENTS FROM ESCROW      4844.86

         MONTHLY PAYMENT TO ESCROW       403.73 (1/12TH OF ABOVE TOTAL)

------ ANTICIPATED ESCROW ACTIVITY -    12/15 THROUGH    11/16 -------

| MONTH | -ANTICIPATED PAYMENTS- | | DESCRIPTION | -- ESCROW BALANCE COMPARISON -- | | |
|---|---|---|---|---|---|---|
| | TO ESCROW | FROM ESCROW | | ANTICIPATED | | REQUIRED |
| | | ACTUAL | STARTING BALANCE | 0.00 | | 3633.67 |
| DEC 15 | 403.73 | 2422.43 | COUNTY TAX | -2018.70 | | 1614.97 |
| JAN 16 | 403.73 | | | -1614.97 | | 2018.70 |
| FEB 16 | 403.73 | | | -1211.24 | | 2422.43 |
| MAR 16 | 403.73 | | | -807.51 | | 2826.16 |
| APR 16 | 403.73 | 2422.43 | COUNTY TAX    ALP | -2826.21 | RLP | 807.46 |
| MAY 16 | 403.73 | | | -2422.48 | | 1211.19 |
| JUN 16 | 403.73 | | | -2018.75 | | 1614.92 |
| JUL 16 | 403.73 | | | -1615.02 | | 2018.65 |
| AUG 16 | 403.73 | | | -1211.29 | | 2422.38 |
| SEP 16 | 403.73 | | | -807.56 | | 2826.11 |
| OCT 16 | 403.73 | | | -403.83 | | 3229.84 |
| NOV 16 | 403.73 | | | -.10 | | 3633.57 |

----------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS    -3633.67.

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS       0.00.

```
------------------ CALCULATION OF YOUR NEW PAYMENT AMOUNT ------------------
          PRINCIPAL & INTEREST                       1120.00 *
          ESCROW (1/12TH OF ANNUAL ANTICIPATED        403.73
              DISBURSEMENTS AS COMPUTED ABOVE)
          PLUS: OPTIONAL INSURANCE PREMIUMS             0.00
          PLUS: REPLACEMENT RESERVE OR FHA SVC CHG      0.00
          PLUS: SHORTAGE PAYMENT                      302.80
          MINUS: SURPLUS CREDIT                         0.00
          ROUNDING ADJUSTMENT                           0.00
          MINUS: BUYDOWN/ASSISTANCE PAYMENTS            0.00
```

BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 12/01/15     1826.53
*   IF YOUR LOAN IS AN ADJUSTABLE RATE MORTGAGE, THE PRINCIPAL & INTEREST
    PORTION OF YOUR PAYMENT MAY CHANGE WITHIN THIS CYCLE IN ACCORDANCE WITH

    YOUR LOAN DOCUMENTS.
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS      807.46.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE

IS TARGETED TO BE YOUR CUSHION AMOUNT.
YOUR ESCROW CUSHION FOR THIS CYCLE IS        807.46.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
08/15        0.00    09/15        0.00    10/15        0.00    *
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
00/00    0.00                      00/00    0.00
00/00    0.00                      00/00    0.00

Licensed as Servis One, Inc. dba BSI Financial Services.

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Thurs. 8:00 am to 8:00 pm (ET), Fri. 8:00 am to 5:00
pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO
80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (#
2001485-DCA). North Carolina Collection Agency Permit (# 105608).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have
received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to
pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and
should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered
otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures
the obligation remain unimpaired.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF PAYMENT CHANGE will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 28, 2015 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**DEBTOR ATTY**
David V Luu
david@luu-law.com

**TRUSTEE**
Amrane (SA) Cohen
efileRS@ch13ac.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) October 28, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
Josephine G. Paragatos
1 Ashbury Court,
Aliso Viejo, CA 92656-4257

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 26, 2015 | Wendy Rodriguez | /s/ WENDY RODRIGUEZ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 5

Nov/3/2015 10:14:25 AM          Quest Diagnostics 9497287128                    1/2

Print Images      Case 8:12-bk-14067-ES    Doc 75    Filed 11/19/15    Entered 11/19/15 12:53:28    Page 1 of 1
                                Main Document      Page 100 of 109

## U.S. Bank Confidential Communication



Requested by: Araiza Sanchez

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.



## U.S. Bank Confidential Communication



Requested by: Araiza Sanchez

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.



JOSEPHINE PARAGATOS
JOSEPH L PARAGATOS

Account  ▓▓▓▓7270     Page 3 of 5
Statement Period - Mar 16 - Apr 14, 2015

010/R1/20F013

| Date | Description | Amount Subtracted | Amount Added | Balance |
|---|---|---|---|---|
| 04/06 | Debit PIN Purchase 06:51p #1116<br>COSTCO WHSE #0890    LAGUNA NIGUELCAUS00153 | 100.35 | | |
| 04/06 | Check # 114 | 3.00 | | 6,030.66 |
| 04/07 | Debit Card Purchase 04/02 07:29p #1116<br>SEAFOOD CITY SUPERMA IRVINE    CA 15094<br>Food & Beverages | 79.64 | | |
| 04/07 | Debit Card Purchase 04/05 01:19p #1116<br>STATERBROS143    ALISO VIEJO  CA 15096<br>Food & Beverages | 39.53 | | |
| 04/07 | Debit Card Purchase 04/05 05:17p #1116<br>RALPHS #0755    ALISO VIEJO  CA 15096<br>Food & Beverages | 9.27 | | |
| 04/07 | Debit Card Purchase 04/04 06:11p #1116<br>GROWERS DIRECT-ALI    ALISO VIEJO  CA 15095<br>Food & Beverages | 3.54 | | |
| 04/07 | Debit Card Purchase 04/03 06:40p #1116<br>STAPLES    00107433 ALISO VIEJO  CA 15094<br>Specialty Retail stores | 3.24 | | |
| 04/07 | Debit Card Purchase 04/03 06:47p #1116<br>STAPLES    00107433 ALISO VIEJO  CA 15094<br>Specialty Retail stores | 1.61 | | 5,893.93 |
| 04/08 | Reversal of Debit PIN Purchase<br>NORDSTROM 337 24155 LAGLAGUNA HILLS CAUSABINE | | 45.36 | |
| 04/08 | Debit Card Purchase 04/06 03:45p #1116<br>RALPHS #0755    ALISO VIEJO  CA 15097<br>Food & Beverages | 3.79 | | 5,935.50 |
| 04/09 | Debit Card Purchase 04/07 06:37p #1116<br>CVS/PHARMACY #08872  ALISO VIEJO  CA 15098<br>Food & Beverages | 5.39 | | 5,930.11 |
| 04/10 | ACH Electronic Credit QUEST DIAGNOSTIC DIR DEP | | 0.81 | 5,930.92 |
| 04/13 | Deposit on 04/11¹ 08:00p #1116<br>Citibank ATM 26916 LA PAZ, ALISO VIEJO, CA | | 4,000.00 | |
| 04/13 | ACH Electronic Debit COUNTY OF ORANGE PROP TAX  93799799 | 2,422.43 | | |
| 04/13 | Cash Withdrawal 02:48p #1116  Teller | 1,000.00 | | |
| 04/13 | Debit Card Purchase 04/09 06:20p #1116<br>STAPLES    00107433 ALISO VIEJO  CA 15100<br>Specialty Retail stores | 8.15 | | |
| 04/13 | Debit Card Purchase 04/09 05:45p #1116<br>STAPLES    00107433 ALISO VIEJO  CA 15100<br>Specialty Retail stores | 2.61 | | |
| 04/13 | Cash Withdrawal on 04/11¹ 08:02p #1116<br>Citibank ATM 26916 LA PAZ, ALISO VIEJO, CA | 300.00 | | |
| 04/13 | Check # 119 | 100.00 | | |
| 04/13 | ACH Electronic Debit DIRECTV    CHECK PYMT 0000000121 | 114.20 | | |
| 04/13 | Check # 123 | 1,000.00 | | 4,983.53 |
| 04/14 | Debit Card Purchase 04/10 09:34a #1116<br>COX*OR CO COM PH8V  949-240-1212 CA 15101<br>Phones, Cable & Utilities | 48.50 | | |
| 04/14 | Debit Card Purchase 04/10 04:49p #1116<br>3589 FOREVER 21    MISSION VIEJO CA 15103<br>Specialty Retail stores | 7.55 | | |
| 04/14 | Debit PIN Purchase 07:16p #1116<br>TJ TJ MAXX    ALISO VIEJO CAUS00166 | 7.56 | | |
| 04/14 | Check # 120 | 91.72 | | |
| 04/14 | Check # 118 | 125.00 | | 4,705.20 |
| | **Total Subtracted/Added** | **8,629.50** | **10,410.12** | |

*All transaction times and dates reflected are based on Eastern Time.*
¹ *Transactions made on weekends, bank holidays or after bank business hours are not reflected in your account until the next business day.*

| Checks Paid | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Check | Date | Amount | Check | Date | Amount | Check | Date | Amount | Check | Date | Amount |
| 110 | 03/23 | 5.00 | 111 | 03/25 | 150.00 | 112 | 03/24 | 300.00 | 113 | 03/27 | 3.00 |
| 114 | 04/06 | 3.00 | 116* | 03/31 | 5.00 | 118* | 04/14 | 125.00 | 119 | 04/13 | 100.00 |
| 120 | 04/14 | 91.72 | 123* | 04/13 | 1,000.00 | | | | | | |

\* Indicates gap in check number sequence    Number Checks Paid:   10     Totaling:   $1,782.72

**DECLARATION OF DAVID V. LUU IN SUPPORT OF OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE AND REQUEST FOR ATTORNEY'S FEES [CCP 1717]**

I, David V. Luu, declare:

1.     I am an attorney at law duly licensed to practice before this Court. I am counsel for the debtor, Josephine G. Paragatos, in the above-captioned bankruptcy case. If called upon to do so, I could and would testify to the following, all of which is within my personal knowledge unless otherwise stated. I make this declaration in support of the Objection to U.S. Bank National Association's Notice of Mortgage Payment Change (the "Objection"), which is filed concurrently herewith.

2.     The petition in this Chapter 13 case was filed on March 30, 2012, which was confirmed on May 22, 2012. Amrane Cohen has been appointed to serve as Trustee in this case.

3.     U.S. Bank filed a Proof of Claim on July 3, 2012, which was amended shortly thereafter on July 27, 2012. A true and correct copy of the Proof of Claims is attached to Debtor's Declaration as "Exhibit 1" and "Exhibit 2," respectively.

4.     On January 9, 2015, a Notice of Mortgage Payment Change was filed by U.S. Bank whereby the interest rate on Debtor's mortgage was adjusted from 2.875% to 3.000%, so that her interest only payment increased from $1,073.33 to $1,120.00. A true and correct copy of the January 9, 2015, Notice of Mortgage Payment Change is attached to Debtor's Declaration as "Exhibit 3."

5.     On October 28, 2015, a Notice of Mortgage Payment Change was filed by U.S. Bank. A true and correct copy of the October 28, 2015, Notice of Mortgage Payment Change is attached to Debtor's Declaration as "Exhibit 4."

6.     I have reviewed the October 28, 2015, Notice of Mortgage Payment Change from U.S. Bank, including the escrow analysis, whereby Debtor's mortgage payment would be increased from $1,120.00 to $1,826.53, with that change to take effect beginning on December 1, 2015. To support the change, U.S. Bank submitted an escrow analysis, for the first time, because

10

of anticipated property tax payments, which would be paid in December 2015 and April 2016. The total of the two tax payments is $4,844.86.

7.    Debtor has been responsible for making property tax payments directly to the county. In fact, she has been making payments directly to the County of Orange, including: one on April 11, 2014, to the County of Orange in the amount of $2,358.65; another on December 8, 2015 for $2,422.43; and, a third one on April 13, 2015 for $2,422.43. A true and correct copy of Debtor's proof of payments, redacted for privacy reasons, is attached to Debtor's Declaration as "Exhibit5."

8.    I attended the University of West Los Angeles School of Law and graduated in December 2005. Upon my graduation, I sat for the bar in February 2006. I passed the bar exam and was admitted to practice in the State of California and all of the Federal District Courts of California on or about July 2006. I was then hired on as an associate with Curtis Law Group where I worked until 2008. In 2008, I left Curtis Law Group and worked at the law firm of Hollins-Schechter as an associate. In 2010, I started my own practice in the City of Santa Ana. My practice is focused on bankruptcy law (60%), real estate and commercial litigation (10%), and personal injury (30%).

9.    My normal hourly rate is $350.00 per hour. However, I charge a discounted hourly rate of $250.00 in Chapter 13 cases.

10.    I do not now, and never have, represented or held any interest adverse to the estate, the Trustee, or the Debtor other than that previously stated, nor to the best of my knowledge do I have any connections, other than stated, with the Debtor, creditors or any other party in interest, their respective attorneys and accountants, the U.S. Trustee or employee of the Office of the U.S. Trustee and that I am a disinterested person within the meaning of 11 U.S.C. Section 327(a), 1103(a) and FRBP 2014(a).

11.    I do not hold any interest adverse to the above-entitled estate and I am a disinterested person as defined in 11 U.S.C. Section 101(14).

12.    Attached is a detailed billing of my time expended related to this Objection.

1

2      13.    U.S. Bank's Deed of Trust provides for payment of collection fees in order to

3  protect their security interest as stated in paragraph 9 of the deed of trust attached to Claim 18-1,

4  and the amended Claim 18-2.  (See Exhibit 1, pages 20-21; and, Exhibit 2, pages 20-21).

5      I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct.

7

8
Dated: _11/19/15_____                                    _____
9                                                           DAVID V. LUU

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Services Rendered:

1. October 30, 2015: Read BSI Notice of Mortgage Payment Change for further file handling; Total time:0.1 hours.

2. October 30, 2015: Telephone call with client Josephine Paragatos re BSI Notice of Mortgage Payment Change for further file handling:0.2 hours.

3. October 30, 2015: Telephone call with attorney Gilbert Yabes re BSI Notice of Mortgage Payment Change for further file handling: 0.3 hours.

4. October 30, 2015: Telephone call with client Josephine Paragatos re BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

5. November 3, 2015: Read fax correspondence from client Josephine Paragatos re BSI Notice of Mortgage Payment Change: 0.1 hours.

6. November 3, 2015: Telephone call with client Josephine Paragatos re BSI Notice of Mortgage Payment Change: 0.1 hours.

7. November 3, 2015: Telephone call with attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.2 hours.

8. November 3, 2015: Prepare correspondence to attorney Gilbert Yabes re BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

9. November 3, 2015: Read correspondence from attorney Gilbert Yabes re BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

10. November 3, 2015: Prepare further correspondence to attorney Gilbert Yabes re BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

11. November 6, 2015: Telephone call with attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

12. November 6, 2015: Prepare correspondence to attorney Gilbert Yabes re BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

13. November 6, 2015: Telephone call with attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.2 hours.

14. November 6, 2015: Telephone call with client Josephine Paragatos re BSI Notice of Mortgage Payment Change: 0.1 hours.

15. November 6, 2015: Prepare correspondence to attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

16. November 6, 2015: Read correspondence from attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

17. November 9, 2015: Read correspondence from client re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

18. November 9, 2015: Prepare correspondence to attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

BK1208: Josephine G. Paragatos – Fees and Costs for Objection to Notice of Mortgage Payment Change

19. November 9, 2015: Prepare correspondence to client re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

20. November 11, 2015: Prepare correspondence to attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

21. November 12, 2015: Prepare correspondence to attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

22. November 13, 2015: Read correspondence from attorney Gilbert Yabes re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

23. November 13, 2015: Read correspondence from client re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

24. November 13, 2015: Prepare correspondence to client re issues related to BSI Notice of Mortgage Payment Change for further file handling: 0.1 hours.

25. November 17, 2015: Review U.S. Bank Claim history, proof of claims, and notices of mortgage payment change for Objection to Notice of Mortgage Payment Change: 0.9 hours.

26. November 17, 2015: Prepare Objection to Notice of Mortgage Payment Change and Declaration of Josephine Paragatos in Support: 2.3 hours.

27. November 17, 2015: Prepare correspondence to client Josephine Paragatos re Objection to Notice of Mortgage Payment Change and Declarations in Support for further file handling: 0.1 hours.

28. November 18, 2015: Read correspondence from client Josephine Paragatos re Objection to Notice of Mortgage Payment Change and Declaration in Support for further file handling: 0.1 hours.

29. November 18, 2015: Prepare correspondence to client Josephine Paragatos re Objection to Notice of Mortgage Payment Change and Declarations in Support for further file handling: 0.1 hours.

30. November 19, 2015: Research re address for service of Objection to Notice of Mortgage Payment Change: 0.1 hours.

31. November 19, 2015: Prepare Declaration of David V. Luu in Support of Objection to Notice of Mortgage Payment Change: 0.7 hours.

32. November 19, 2015: Finalize documents, serve, and file with Court: 0.7 hours.

**Total time billed: <u>7.9 hours @ billable rate of $250/hour</u>**

**Total Due:**              <u>**$1,975.00**</u>

**Additionally, costs advanced by our office include the following:**

1. November 19, 2015: Notice of Objection and Objection to Mortgage Payment Change:

|  | | |
|---|---|---|
| Copy Costs: 111 pages * 3 Copies = 333 pages | | |
| Pages = $33.30 | | $ 33.30 |
| Postage: $5.75 * 3 | | $ 17.25 |

**Total Costs Advanced:**                                **$50.55**

**Total amount due for attorney's fees, plus costs:**    <u>**$2025.55**</u>

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

930 W. 17th Street, Suite B
Santa Ana, CA 92706

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/19/2015    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  11/19/2015   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/19/2015 | David V. Luu | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                          **F 3007-1.1.NOTICE.OBJ.CLAIM**

## SERVICE LIST

### TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

**Marian Garza:** ecfnotices@ascensioncapitalgroup.com;
**Michael W Aiken:** MAiken@NBSDefaultServices.com;
**Amrane (SA) Cohen (TR):** efile@ch13ac.com;
**Josephine E Salmon:** ecfcacb@aldridgepite.com;
**Ramesh Singh:** claims@recoverycorp.com;
**Balpreet Thiara:** bkthiara@gmail.com;
**Catherine T Vinh:** ecfcacb@piteduncan.com;
**Johnathan J Kirby:** Johnathan.Kirby@JeffersonCapitalInternational.com;
**Dolores Garcia:** dgarcia@portfoliorecovery.com;
**David V Luu:** david@luu-law.com;
**Megan E Lees:** ecfcacb@aldridgepite.com;
**Gilbert R Yabes:** ecfcacb@aldridgepite.com;
**United States Trustee (SA):** ustpregion16.sa.ecf@usdoj.gov

### SERVED BY UNITED STATES MAIL

Honorable Erithe A. Smith
411 West Fourth Street
Santa Ana, CA 92701-4593

U.S. Bank National Association
c/o Chairman, President, and CEO Richard K. Davis
425 Walnut Street
Cincinnati, OH 45202

BSI Financial Services
314 S. Franklin Street
Titusville, PA 16354